

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

MRM:KCM
F. #2022R00817

*610 Federal Plaza*
*Central Islip, New York 11722*

July 31, 2024

<u>By ECF</u>

The Honorable Nina R. Morrison
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Dwayne Pickett
             Criminal Docket No. 22-CR-486 (NRM)

Dear Judge Morrison:

        The government respectfully submits this sentencing memorandum in advance of the defendant's sentencing, which is scheduled for August 14, 2024, and in response to the defendant's sentencing submission. <u>See</u> ECF Dkt. 32 (hereinafter "Def. Mem."). For the reasons set forth below, the government requests that the Court impose a sentence of 150 months' incarceration, which is within the United States Sentencing Guidelines ("Guidelines") and which is consistent with the ranges calculated by the Probation Department in the Pre-Sentence Investigation Report ("PSR") and by the defense. This sentence would be sufficient, but not greater than necessary, to achieve the goals of sentencing: among other things it balances the seriousness of the defendant's crimes and the need for deterrence of like behavior.

I.     <u>Background</u>

    A.  <u>Offense Conduct</u>

        On or about September 13, 2022, an undercover officer ("UC") contacted the defendant via an iPhone FaceTime video call. (PSR ¶ 7). The defendant, who identified as "Waynehead," discussed the sale of a firearm with the UC. The defendant had approximately eleven firearms for sale at the time. On September 14, 2022, the defendant met the UC at a gas station, located on 150th Street in Jamaica, New York. (<u>Id.</u> ¶ 8). During the interaction, which was captured on video, the UC purchased ten firearms from the defendant for approximately $11,500. The defendant further told the UC that he had approximately fifteen additional firearms that he would be willing to sell the UC the following week. (<u>Id.</u>).

Law enforcement traced the serial numbers of the firearms sold by the defendant to the UC following the September 14, 2022 sale, and found that eight of the ten firearms sold by the defendant were reported stolen from a federal firearms licensee in North Carolina.  (Id.  ¶ 9).

On or about September 22, 2022, the UC contacted the defendant on the encrypted messaging application, Telegram.  During this conversation, which was recorded, the defendant sent the UC a photograph of a black semi-automatic firearm with the caption "1000," representing the cost.  The UC replied, asking the defendant if the firearm came with "food," meaning, did the firearm sale include ammunition.  The defendant replied in the affirmative.  The UC then asked the defendant if there were any more firearms for sale, whereby the defendant replied in the affirmative and sent several photographs of firearms, as well as prices, including one firearm for $1,000, and another for $900.  (Id.  ¶ 10).  Screenshots of the conversation between the defendant and UC are depicted below.



During this investigation, law enforcement monitored the defendant's location and observed that on the evening of September 26, 2022, the defendant traveled from North Carolina to the New York area. (Id. ¶ 11).  On September 27, 2022, the UC agreed with the defendant to meet at the same gas station in Jamaica, Queens, where the defendant would sell the UC nine firearms for approximately $11,000.  The defendant arrived at the gas station at approximately 1:00 p.m., carrying a black duffle bag.  (Id. ¶ 12).  The defendant was apprehended by law enforcement as he approached the UC's vehicle, at which time agents seized the defendant's duffle bag and recovered five firearms and assorted ammunition.  Upon tracing the serial numbers of the firearms recovered on September 27, law enforcement learned that one of the firearms seized was reported stolen in Charlotte, North Carolina, on November 28, 2021. (Id. ¶ 13).  A photograph of the firearms recovered from the defendant's duffle bag is depicted below.



Following his arrest, the defendant admitted, in sum and substance, that he sold firearms on September 14, 2022, and that he had acquired the firearms recovered in his duffle bag on September 27, 2022, from other individuals in New York. (Id. ¶ 14).

B. The Defendant's Guilty Plea

On March 7, 2024, the defendant pled guilty before Judge Nina R. Morrison, United States District Judge for the Eastern District of New York, to the three-count Indictment charging the defendant with firearms trafficking and being a felon in possession of a firearm in violation of Title 18, United States Code, Sections 922(a)(1)(A), 924(a)(1)(D), 922(g)(1) and 924(a)(2). (See PSR ¶ 1).

C. The Defendant's Criminal History

Prior to the instant offense, the defendant had been convicted of multiple misdemeanor and felony offenses. The defendant's criminal history demonstrates that despite multiple convictions and several terms of imprisonment since 2011, the defendant has never been deterred from criminal behavior. The defendant's history exhibits a pattern of failure to comply with the law and includes, but is not limited to, the following serious felony convictions:

On June 29, 2013, the defendant was arrested and initially charged with first degree murder. There are no records available for this arrest. The defendant was convicted of obstruction of justice after a bench trial; on January 29, 2016 the defendant was sentenced to 6 months' to 17 months' imprisonment. (See PSR ¶ 40).

On May 26, 2016, the defendant was arrested and charged with possession of a firearm by felon. On August 9, 2018, the defendant was convicted and sentenced to 14 months' to 26 months' imprisonment. The sentence was ordered to run at the expiration of the defendant's sentence imposed in the case bearing the October 6, 2017 arrest, which is described below. The defendant's incarceration for this matter was ultimately suspended and instead the defendant was placed on 30 month's supervised release. (See PSR ¶ 42).

On August 21, 2016, the defendant was again arrested and charged with being a felon in possession of a firearm. The defendant was sentenced on August 9, 2018, to 14 months' to 26 months' imprisonment, which was ordered to run at the expiration of the defendant's sentence imposed in the case bearing the October 6, 2017 arrest, which is described below. The defendant's incarceration for this matter was ultimately suspended and instead the defendant was placed on 30 month's supervised release. (See PSR ¶ 44).

On March 22, 2017, the defendant was arrested and charged a third time with being a felon in possession of a firearm. The conviction stems from an offense which occurred on September 2, 2016. Notably, the defendant was on probation at the time of the offense. The defendant was arrested in March 2017 and released on bond. On August 9, 2018, the defendant was sentenced to 14 months' to 26 months' imprisonment, which was ordered to run at the expiration of the defendant's sentence imposed in the case bearing the October 6, 2017 arrest, which is described below. The defendant's incarceration for this matter was ultimately

suspended and instead the defendant was placed on 30 month's supervised release. (See PSR ¶ 47).

On October 6, 2017, defendant pointed a firearm at a woman's head and stole her of her wallet and iPad. A warrant was issued for the defendant's arrest four days later, on October 10, 2017. On November 2, 2017, the defendant was arrested on the warrant and was charged with common law robbery. The defendant remained in custody until August 22, 2018, when he was transferred to a correctional facility. The defendant was released on February 1, 2019. (See PSR ¶¶ 48, 49).

As detailed herein, the defendant was convicted of three separate charges of being a felon in possession of a firearm, related to the defendant's May 26, 2016, August 21, 2016, and March 22, 2017 arrests. For those three cases, the defendant was initially sentenced to a minimum of 14 months' imprisonment and a maximum of 26 months' imprisonment. This sentence was to run at the expiration of the defendant's sentence related to the October 6, 2017 robbery. However, as stated above, the defendant's incarceration was suspended and instead he was placed on a 30-month term of probation. This period of probation was ordered to begin when the defendant was released from custody.

The defendant was released from custody and began the 30-month term of probation on February 1, 2019. On April 15, 2019, approximately two months after he was released from incarceration, the defendant violated the terms of his probation by failing to comply with house arrest and electronic monitoring. Then, on July 9, 2019, the defendant was remanded into custody for 90 days and released on October 7, 2019. The defendant again violated the terms of his probation on April 18, 2021, when his drug test was positive. The defendant once again violated probation on June 30, 2021, before it expired in July 2021.

As noted, the above-described convictions are only a fraction of the defendant's criminal history. As detailed in the PSR, the defendant has numerous misdemeanor convictions going as far back as 2011, including drug possessions (PSR ¶¶ 35, 36, 39, 41), breaking and entering (PSR ¶ 37), and driving offenses (PSR ¶¶ 38, 43, 45, 46, 50). Additionally, the defendant has been indicted in Queens County with sex trafficking, and other related charges; this case is pending and the defendant is next to appear in court in August 2024. (PSR ¶ 54).

The defendant's record demonstrates that no arrest, conviction, or period of incarceration will deter him from committing violent crimes. The defendant has a complete disregard for the safety of his community and those in this district. The defendant's record and course of behavior demonstrate that he has, and will continue to, place his interests over those of society.

II.  Applicable Law

The Supreme Court has explained that the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support

the sentence requested by a party.  In so doing, [it] may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented." Id. at 49-50 (citation and footnote omitted).  "When a factor is already included in the calculation of the [G]uidelines sentencing range, a judge who wishes to rely on that same factor to impose a sentence above or below the range must articulate specifically the reasons that this particular defendant's situation is different from the ordinary situation covered by the [G]uidelines calculation." United States v. Sindima, 488 F.3d 81, 87 (2d Cir. 2007) (quotation omitted, alterations in original). "[W]here the sentence is outside an advisory Guidelines range, the court must also state 'the specific reason' for the sentence imposed, in open court as well as in writing – 'with specificity in a statement of reasons form' that is part of the judgment." United States v. Aldeen, 792 F.3d 247, 251-252 (2d Cir. 2015), as amended (July 22, 2015) (quoting 18 U.S.C. § 3533(c)(2)).

Title 18, United States Code, Section 3553(a) provides, in part, that in imposing sentence, the Court shall consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct; [and]

(C) to protect the public from further crimes of the defendant.

Section 3553 also recognizes the need to afford the defendant opportunities for rehabilitation.  See 18 U.S.C. § 3553(a)(2)(D).

At sentencing, "the court is virtually unfettered with respect to the information it may consider." United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1988).  Indeed, 18 U.S.C. § 3661 expressly provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

Thus, the Court must first calculate the correct Guidelines range, and then apply the 3553(a) factors to arrive at an appropriate sentence.  The district court must also "remain cognizant of them throughout the sentencing process." Gall, 552 U.S. at 50 n.6.

A.  Guidelines Calculation

The United States agrees with the defense that, although we generally apply the Sentencing Guidelines that are "in effect on the date the defendant is sentenced," 18 U.S.C. § 3553(a)(4)(A)(ii), the Commission instructs the courts to "use the Guidelines Manual in effect on the date that the [defendant's] offense of conviction was committed" if they "determine [] that

use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the *ex post facto* clause of the United States Constitution," U.S.S.G. §§ 1B1.11(a), (b)(1).  See Def. Mem. at 3.  However, the government is in also in agreement with United States Probation Department's determination that the firearms trafficking enhancement applies, as discussed below; therefore, the defendant's total offense level is 27 and his guidelines range is 130 to 162 months.  The government's recommendation of 150 months falls within this range.

Count One

| | | |
|---|---|---:|
| Base Offense Level (§ 2K2.1(a)(4)(B)) | | 20 |
| Plus:  | 8-24 Firearms Involved (§ 2K2.1(b)(1)(B)) | +4 |
| Plus  | Stolen Firearms (§ 2K2.1(b)(4)) | +2 |
| Plus:  | Firearms Trafficking (§ 2K2.1(b)(5)) | +4 |
| Total:  | | 30 |

Counts Two and Three:

| | | |
|---|---|---:|
| Base Offense Level (§ 2K2.1(a)(6)) | | 20 |
| Plus:  | 8-24 Firearms Involved (§ 2K2.1(b)(1)(B)) | +4 |
| Plus  | Stolen Firearms (§ 2K2.1(b)(4)) | +2 |
| Plus:  | Firearms Trafficking (§ 2K2.1(b)(5)) | +4 |
| Total:  | | 30 |
| Less: Acceptance of Responsibility (U.S.S.G. § 3E1.1(a) and (b)) | | -3 |
| Combined Adjusted Offense Level | | 27 |

It is important to note that in this case, a four-level trafficking enhancement (U.S.S.G. §2K2.1(b)(5)) applies, given the defendant's criminal history involving firearms, which reflects his knowledge, and the defendant's repeated conversations with the undercover officer, which took place on an encrypted messaging application, regarding the intentional sale of firearms on two different dates.  As the Second Circuit recently held, the trafficking enhancement applies to a defendant "engag[ing] in the trafficking of firearms."  U.S.S.G. § 2K2.1(b)(5); see United States v. Mujaahid, No. 21-2494, 2023 WL 4417356, at *2 (2d Cir. July 10, 2023); see also United States v. Jennings, No. 22-220, 2023 WL 2799889, at *2-3 (2d Cir. April 6, 2023).  Subsection (b)(5) applies, regardless of whether anything of value was exchanged, even if the defendant "received two or more firearms with the intent to transport, transfer, or otherwise dispose of firearms to another individual" and "knew or had reason to

believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual whose possession or receipt of the firearm would be unlawful." U.S.S.G. § 2K2.1 Application Note 13. In this case, the defendant travelled to New York on two occasions intent on selling several guns to an undercover officer; on one date, the defendant completed the sale, which notably involved the sale of firearms that had recently been reported stolen. See Mujaahid, 2023 WL 4417356, at *2 (a defendant's illicit street sales of three firearms are sufficient to show he had reason to believe he was transferring a firearm to an individual who intended to use or dispose of a firearm unlawfully); see also Jennings, 2023 WL 279989, at *5 (given the discreet nature of the transactions by which the CI was obtaining the firearms, the defendant had reason to believe the guns were headed to an illicit market). As in Mujaahid and Jennings, the defendant in this case had no reason to believe that such dangerous weapons the defendant is convicted of possessing, such as easily concealable pistols, with which the defendant traveled to New York intending to sell, were for a legal gun collection, lawful personal use, or would otherwise be transferred to an individual "who intended to use or dispose of the firearm []lawfully." See id.; see also United States v. Martin, 78 F.3d 808 812 (2d Cir. 1996) (district court did not err in finding that potential purchasers or firearms were not gun collectors given the large number and types of guns involved).

Because the defendant falls within Criminal History Category VI, see PSR ¶¶ 106-107, his Total Offense Level of 27 yields an advisory Guidelines range of 130 months to 162 months' imprisonment.

B. Sentencing Guidelines

The § 3553(a) factors counsel heavily in favor of a sentence within the Guidelines range. Such a sentence is sufficient but not greater than necessary to reflect the nature and circumstances of the offense and the history and characteristics of the defendant, to reflect the seriousness of the offense, to promise respect for the law, to provide just punishment for the offense and to afford adequate deterrence to criminal conduct.

1. The Nature and Circumstances of the Offense

The offense conviction—firearms trafficking and possession of a firearm by a felon—are inherently serious offenses and these crimes, on their own, merit the requested sentence. Moreover, there is an overriding interest in punishing firearms offenses, which are a scourge in our communities. Further, gun-related violence is an epidemic in New York City. See Office of the Mayor of New York City, The Blueprint to End Gun Violence 3 (2022).

In this case, the defendant travelled interstate on two separate dates, with an array of dangerous guns. Indeed, the clandestine transfer of pistols stood to wreak havoc in our community. The circumstances by which guns were transported to New York City and sold to the UC assured that the whole purpose was to put them in the "wrong" hands.

2. The History and Characteristics of the Defendant

The defendant is a recidivist who has been arrested and convicted of multiple crimes—many involved the possession and use of firearms—throughout his life. (See PSR ¶¶ 42, 44, and 47). Notably, several of the defendant's prior gun possessions occurred while he had

8

pending cases for the very same offense. At least one of his prior gun convictions involve his possession of a firearm while on probation. (Id. at ¶ 47). Most importantly, some of his convictions involve more than mere possession. In October 2017, the defendant had three pending firearms cases when he committed a violent robbery, where the defendant forcibly stole an iPad and wallet from a female victim while holding a firearm to her head. (See id. at ¶ 48, 49. The seriousness of the defendant's conduct cannot be overstated, and despite numerous convictions and prolonged periods of incarceration, the defendant remains undeterred from continuing criminal conduct that poses a serious risk to the public.

Clearly, the defendant's conduct and criminal history demonstrates that neither arrest nor criminal prosecution has deterred him from procuring, possessing, or selling firearms illegally. Even after his conviction for robbery with a firearm and several convictions of felony firearm possession, the defendant was not deterred from the criminal activity charged in the instant matter. Therefore, a significant sentence within the Guidelines range is necessary to provide adequate deterrence to future criminal conduct by the defendant. Moreover, general deterrence is similarly important in cases like these, for without a meaningful and substantial penal consequence for the illegal possession of firearms, there is limited incentive for individuals to refrain from carrying and using them.

The sentence should appropriately account for the history and characteristics of the defendant. See 18 U.S.C. § 3553(a)(1). The defendant has a long and troubling criminal history, indicating that prior sentences have failed to deter him and that he has no respect for the law.

3.  Reflecting the Seriousness of the Offense, Promoting Respect for the Law and Providing Just Punishment

A sentence within the advisory Guidelines range is also necessary to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment. 18 U.S.C. § 3553(a)(2)(A). As noted above, the offenses of conviction are serious, and the defendant's repeated commission of crimes indicate that he lacks respect for the law. A sentence below the Guidelines range would therefore not serve the important purposes of sentencing, especially in the case of this defendant, who continually shows disregard for the law and public safety.

4.  Affording Deterrence and Protecting the Public

A significant sentence of 150 months, which is within the Guidelines range of 130 months to 162 months, is necessary to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2)(B) & (C). "Under Section 3553(a)(2)(B), there are two major considerations: specific and general deterrence." United States v. Davis, 08-CR-332 (JBW), 2010 WL 1221709, at *2 (E.D.N.Y. March 29, 2010). Because the defendant committed crimes over a number of years—even after sustaining arrests and convictions—he is clearly in need of specific deterrence.[1] In addition, by

---

[1]     The 36-month sentence sought by the defendant (Def. Mem. at 1) is inappropriately low given the defendant's criminal history and conduct charged in this case.

imposing a sentence of 150 months, the Court can send a message to others. Without a meaningful and substantial penal consequence for the illegal possession of firearms, there is limited incentive for individuals to refrain from carrying and using them. Perhaps more importantly, in light of the defendant's commission of crimes even after sustaining convictions—including possession firearms on several different occasions—a term of imprisonment of 150 months will protect the public by temporarily preventing the defendant from continuing to commit crimes.

5.   A Departure or Variance from the Sentencing Guidelines Is Not Warranted

Defense counsel requests a significant downward departure, based in part on the defendant's challenging childhood, mental health needs, conditions at the Metropolitan Detention Center ("MDC"), and the desire to be present for his family. Def. Mem. at 3-6. The government does not believe any of these considerations warrant a downward departure, let alone such a significant downward departure as defense is seeking.

The defendant seeks a sentencing departure from the applicable Guidelines based in part on what he describes as the difficult conditions of his incarceration at the MDC. Def. Mem. at 10. The defendant's submission largely relies on sweeping statements about the MDC, without focusing on any specific impact on the defendant. This is not a reason to depart from the Guidelines and impose a lower sentence. See, e.g., United States V. Thawney, No. 20-CR-428 (WFK), 2022 WL 2132993, at *5 (E.D.N.Y. June 14, 2022) (rejecting request for downward variance based on the defendant's argument that the court should "account for harsh conditions in which Defendant was incarcerated while in the MDC"); Transcript of Sentencing, Hon. Pamela K. Chen, United States v. Idris Dayo Mustapha, No. 23-CR-440 (E.D.N.Y. May 1, 2024), at 33-34 (noting that the Court is "not going to be convinced by general descriptions of the conditions at the facility or in the BOP system writ large that a variance is warranted for any particular defendant; rather, I am looking at how those conditions have affected the [] conditions of the incarceration experienced by this defendant. And there is far less in the sentencing submission about that then there is about statistics and rather lurid and graphic descriptions of conditions at the MDC and in the BOP system generally"). Given the lack of any specific showing that conditions at MDC had any effect on the defendant, this Court should not given any sentence reduction based on conditions at MDC, much less than the departure the defendant seeks.

The defendant also points to his personal history in support of his downward variance. Though the defendant may have experienced a difficult childhood, U.S.S.G. § 5H1.12 states that "lack of guidance as a youth and similar circumstances indicating a disadvantaged upbringing are not relevant grounds in determining whether a departure is warranted."

The defendant was 27 years old when he sold stolen firearms to the UC, and as described in more detail below, had a substantial criminal history at the time he knowingly transferred those firearms, on two separate dates, from North Carolina to New York, for the

---

Given the Guidelines range and the defendant's penchant for violent crimes, such a low sentence would not deter the defendant and would, in effect, condone this conduct.

purpose of selling them on the illicit market.  At the time, the defendant was a convicted felon several times over, having previously been convicted of numerous other violent felonies, including those involving firearms.  The defendant's conduct, as charged, was purposeful and intentional.  The defendant does not point to any consideration that distinguishes this case from the multitude of other firearm trafficking and felon in possession cases which come before this Court.  Simply put, nothing about the defendant's age or prior history at the time of his crimes is "so unusual or extraordinary to justify a downward departure."  See United States v. Lyttle, 460 F. App'x 3, 10 (2d Cir. 2012) (summary order) (citing U.S.S.G. § 5H1.1).  The facts of the defendant's prior criminal history are relevant to this Court's sentencing determination and support a lengthy sentence.  See United States v. Mishoe, 241 F.3d 214, 220 (2d Cir. 2001) (discussing the need for longer sentences for those with prior convictions whose conduct was not deterred).

        The defendant argues more broadly that his criminal history is overstated.  Def Mem. at 9.  The government disagrees.  The defendant was pled guilty to five different felonies stemming from five different cases.  PSR  ¶ 42, 44, 47, 48, 49; see Dem. Mem. at 9.  After serving his term of imprisonment, the defendant was placed on probation and almost immediately violated it.  PSR ¶ 42, 44, 47.  Though the defendant was placed on one period of probation for his three felon in possession convictions, these were separate crimes committed on separate dates.  Each of the defendant's crimes is indicative of separate wrongful conduct and should therefore be counted separately for purposes of determining a true understanding of the defendant's history.  The Court should not vary or depart downward from the Guidelines based on the defendant's arguments about his period of probation or his criminal history.

        Finally, though the defendant argues that a downward variance is warranted so that he may be present for his family, such a departure is inapplicable in the defendant's case.  See Def. Mem. at 5.  As the Second Circuit has held, the Guidelines disfavor departure based on family responsibilities and such departures are not permitted except in extraordinary circumstances.  See United States v. Smith, 331 F.3d 292, 294 (2d Cir. 2003).  The Second Circuit has found that such extraordinary circumstances exist where, for example, the defendant provided substantial support for two children and the defendant's wife spoke limited English, see United States v. Galante, 111 F.3d 1029, 1035 (2d Cir. 1997), where the defendant was the sole support for several young children, see United States v. Johnson, 964 F.2d 124, 129-30 (2d Cir. 1992), and where the defendant supported his family and his disabled father relied on the defendant to get out of his wheelchair, see United States v. Alba, 933 F.2d 1117, 1122 (2d Cir. 1991).  In contrast, a downward departure is unavailable in instances, such as here, where a defendant's incarceration would disrupt ordinary family responsibilities, including, as the defendant notes, the disruptive impact on young children and their development.  See Johnson, 964 F.2d at 128; see also United States v. Faria, 161 F.3d 761, 762-63 (2d Cir. 1998).  The defendant is not the sole caretaker for any of his children, and his absence from the home—given his numerous and extended periods of incarceration—for much of his adult life demonstrates that the defendant's family can subsist without his support.  Furthermore, given the defendant's proclivity for possessing illegal firearms, it is undeniable that his children are safer in an environment without the exposure to dangerous and deadly weapons.

III.     Conclusion

   For the foregoing reasons, the United States respectfully requests that the Court impose a sentence of 150 months, which is within the applicable Guidelines range of 130 to 162 months' imprisonment.

        Respectfully submitted,

        BREON PEACE
        United States Attorney

    By:     /s/
        Kaitlin C. McTague
        Assistant United States Attorney
        (631) 715-7878

cc: Clerk of Court (By ECF)
  Kyla Wells, Esq. (By ECF and Email)
  United States Probation Department (By Email)